## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | * | **CRIMINAL NO. 20-117** |
| v. | * | SECTION: "G" |
| **DANNY PATRICK KEATING, JR.** | * | |
| | * * * | |

> **U.S. DISTRICT COURT**
> **EASTERN DISTRICT OF LOUISIANA**
>
> FILED  **Jun 17 2021**
>
> **CAROL L. MICHEL**
> **CLERK**

### FACTUAL BASIS

### Introduction

Should this matter have gone to trial, the government would have proved through the introduction of reliable testimony and admissible tangible exhibits, including documentary evidence, the following to support the allegations charged by the government in Count 1 of the Indictment now pending against the defendant, charging him with a violation of Title 18, United States Code, Section 371, Conspiracy to Commit Mail and Wire Fraud.

The defendant, **DANNY PATRICK KEATING, Jr. ("KEATING")**, resided in New Orleans, Louisiana and was a personal injury attorney licensed to practice in Louisiana. **KEATING** operated a law firm under various names at different times in the New Orleans metropolitan area.

Attorneys A, B, and C were personal injury attorneys licensed to practice law in Louisiana. Attorneys A, B, and C worked together in the same personal injury law firm located in New Orleans.

### The Scheme

Beginning in or about the spring of 2017, Co-Conspirator A, Co-Conspirator C, and others introduced Damian Labeaud ("Labeaud") to **KEATING** at a restaurant in New Orleans.   During

1

AUSA
Defendant
Defense Counsel



the meeting, Labeaud told **KEATING** that he began bringing staged automobile accidents to Attorney B while he was at his previous place of employment.  Labeaud continued to bring staged accidents to Attorney B after he formed a law firm with another Attorney.  Attorney B paid Labeaud $1,000.00 per person involved in the staged accidents.  **KEATING** agreed to pay Labeaud the same amount as Attorney B, $1,000.00 per passenger for accidents with tractor-trailers and $500.00 per passenger for accidents that did not involve tractor-trailers.  After the meeting, Labeaud began referring persons involved in staged motor vehicle accidents to **KEATING** in exchange for money.  After this initial meeting, **KEATING** knew that Labeaud was intentionally staging automobile accidents and referring those potential plaintiffs to **KEATING**.  Roderick Hickman ("Hickman") served as a slammer and a spotter along with Labeaud.[1]  Mario Solomon ("Solomon") was also a spotter who worked with Labeaud in staging automobile accidents.  **KEATING** was told that Hickman was also staging automobile accidents in exchange for money for Attorney B's law firm.

The Government would establish that **KEATING** knowingly paid Labeaud for approximately thirty-one (31) illegally staged tractor-trailer accidents.  **KEATING** represented approximately 77 plaintiffs involved in the 31 accidents staged by Labeaud, including, but not limited to, Larry Williams ("Larry Williams"), Lucinda Thomas ("Thomas"), Mary Wade ("Wade"), Judy Williams, a/k/a Judy Lagarde ("Judy Williams"), Dashontae Young ("Young"), Marvel Francois ("Francois"), Bernell Gale ("Gale"), Troy Smith ("Smith"), Lois Russell

---

[1] A "slammer" was an individual who drove a vehicle and intentionally collided with 18-wheeler tractor-trailers in order to stage accidents.  A "spotter" was an individual who would follow a slammer in a separate vehicle and would pick up the slammer after the staged accident in order to flee the scene and evade detection.

2

AUSA _BR_
Defendant _____
Defense Counsel _____

("Russell"), John Diggs ("J. Diggs"), Henry Randle ("Randle"), as well as Clients D, E, F, and G.[2] **KEATING** settled approximately 17 of the 31 accidents staged by Labeaud. **KEATING** dismissed and/or withdrew from the remaining 14 cases.

Attorney A represented Tanya Givens ("Givens"), Dakota Diggs ("D. Diggs") and Client I. Labeaud solicited staged accidents to **KEATING** and Attorneys B and C. **KEATING** accepted some staged accident cases from the law firm of Attorneys A, B, and C via Labeaud. Russell, J. Diggs, Givens, and D. Diggs were represented at various times by **KEATING** and Attorney A, B, and C's law firm.

**KEATING** advanced Labeaud thousands of dollars for accidents and instructed Labeaud that he owed **KEATING** a certain number of accidents based on the amount of money advanced. **KEATING** issued checks drawn on **KEATING**'s IberiaBank ("Iberia") account to Labeaud to compensate Labeaud for referring passengers involved in staged accidents. **KEATING** maintained bank accounts with Iberia, a domestic financial holding company with approximately 190 bank branch offices located throughout the southern United States. Iberia operated a branch location at 2401 Canal Street in New Orleans, Louisiana, in the Eastern District of Louisiana. Cashed or deposited Iberia checks resulted in electronic wire communications from Louisiana to the Federal Reserve in Atlanta, Georgia. For instance, on or about July 17, 2017, **KEATING** gave Labeaud $15,000.00 drawn on his Iberia account so Labeaud could purchase a $15,000.00 Chase Bank cashier's check to purchase Solomon's truck. Additionally, on or about September 25, 2017, **KEATING** wrote a $17,000.00 check drawn on his Iberia account to himself for

---

[2] Clients E and F are deceased.

AUSA
Defendant
Defense Counsel

"advertising" and used the proceeds to purchase a $17,000.00 cashier's check payable to Labeaud. These two Iberia checks caused wire transmissions from Louisiana to Georgia.

Labeaud and **KEATING** sometimes discussed the staging of accidents before they happened and would communicate via coded language regarding staging accidents.  For example:

> On or about May 19, 2017, at 9:05 A.M., **KEATING** texted Labeaud, "I can't answer the phone right now. Please [call] back later." At 9:13 A.M., Labeaud responded, "Ok homie I understand! I'm going fishing this morning & I was trying 2 c if u was gd 4 now r u would like some more of them big bull red's?" At 9:20 A.M., **KEATING** responded, "Good for now. Chat next week."

> On May 24, 2017, at 9:37 A.M., Labeaud texted **KEATING**, "Gd morning! Do u want somemore fish 2dy 4 lunch bro !!"  At 9:42 A.M., **KEATING** responded, "Yes, sir."  At 10:01 A.M., Labeaud responded, "Ok I got u bro! . . . . Soon as I'm done here cn I c u about yesterday? N I will have u 4 more 2dy ok homie !!"  At 10:04 A.M., **KEATING** responded, "Okay. I need to catch my breath after today." At 10:12 A.M., Labeaud responded to **KEATING**, "Lol . . . I told u I got u bro! So u want me 2 just call u when I'm done with this so we cn hook up?"  At 10:14 A.M., **KEATING** responded, "Yep", followed by "You've been great, bro." Labeaud responded, "Thanks, bro! Wait until da end of da year homie!"  At approximately 11:06 A.M., Labeaud texted **KEATING**, "I'm here" and **KEATING** responded, "3 min."  On May 24, 2017, at 12:59 P.M., Labeaud texted **KEATING**, "Ok homie I got da other 4 for u!! What's up?"  At 1:02 P.M., **KEATING** responded to Labeaud, "Bring em by?" Labeaud responded, "Ok c u n a min bro!" to which **KEATING** responded, "Cool."  On May 25, 2017, at 1:57 P.M., **KEATING** texted Labeaud, "Money not the issue. Processing the catch is the problem. Talk to you Tuesday!!"

**KEATING** made loans and/or advances to clients with checks drawn on **KEATING's** Iberia account.  **KEATING** discussed with his clients in the staged accidents that they would likely receive more money in settlement if they received medical treatment.  **KEATING** referred his clients in the staged accidents to certain known medical providers.

**KEATING** filed lawsuits in state and federal court in Louisiana on behalf of his clients who were involved in the staged accidents.   The lawsuits filed on behalf of the 77 plaintiffs falsely alleged who was driving the vehicles and misrepresented who was at fault in the staged accidents.

AUSA 
Defendant
Defense Counsel

**KEATING** used the U.S Postal Service to mail settlement demands on behalf of his clients who were involved in staged accidents from the Eastern District of Louisiana to various out-of-state locations. In some cases, **KEATING** withdrew from the lawsuits filed on behalf of his clients who were involved in staged accidents involving Labeaud.

The Government would introduce evidence of the following five (5) staged accidents orchestrated by Labeaud, Hickman, and others, and referred to **KEATING**. **KEATING** knew that these accidents were staged.

### The March 27, 2017 Staged Accident (Mercury Mountaineer)

On March 27, 2017, Russell, J. Diggs, and Givens were involved in a Labeaud/Hickman staged accident on Chef Menteur Highway near Downman Road involving a 2007 Mercury Mountaineer ("Mountaineer") with a 2017 Freightliner tractor-trailer operated by HMNG Trucking, LLC ("HMNG Trucking").

After the staged accident on March 27, 2017, **KEATING** met with Russell and J. Diggs to discuss **KEATING's** representation of them. At some point after retaining Attorney D, Givens switched representation to **KEATING**. Givens received "loans" or "client advances on settlement" from **KEATING**, including, but not limited to, checks in the approximate amounts of $1,701.88 on or about May 17, 2017, and $750.00 on or about May 24, 2017. On or about July 20, 2017, **KEATING** texted Labeaud, "Your girl Tanya Givens just tired [sic] me and hired [an attorney with the law firm of Attorneys A, B, and C]."

On or about November 2, 2017, **KEATING**, or an attorney at his direction, filed the Russell/J. Diggs Lawsuit in CDC, and on February 5, 2018, added Russell as a plaintiff. On or about April 22, 2019, **KEATING** deposited a settlement check into his Iberia account in the amount of approximately $17,500.00 for Russell from counsel for HMNG Trucking, Security

5



AUSA
Defendant
Defense Counsel

National Insurance Company ("Security"), and Truck Driver A.  On or about May 30, 2019, **KEATING** deposited a settlement check into his Iberia account in the amount of approximately $140,000.00 for J. Diggs from counsel for HMNG Trucking, Security, and Truck Driver A.

### The May 17, 2017 Staged Accidents (Ford F-150 and Dodge Durango)

On May 17, 2017, Randle, D. Diggs, and Client D were involved in a Labeaud/Hickman staged accident on Calliope Street at the merge onto U.S. Highway 90 Eastbound involving a 2004 Ford F-150 ("Ford F-150") belonging to Co-Conspirator C with a 2006 Freightliner tractor-trailer operated by Stevie B's Trucking LLC ("Stevie B's Trucking"). On the same day, Francois, Gale, Smith, and Client E were involved in a Labeaud/Hickman staged accident on Chickasaw Street involving a 2007 Dodge Durango ("Durango") belonging to Francois with a 2017 Peterbilt tractor-trailer operated by Tennessee Commercial Warehouse, Inc. ("TCW").

Co-Conspirators A and C recruited the passengers for the May 17, 2017 accidents. The day before the staged accidents, on or about May 16, 2017, Co-Conspirator C cashed a check from **KEATING**, dated May 16, 2017, referencing "client advance on settlement" in the amount of approximately $800.00.  On or about May 16, 2017, at approximately 1:40 P.M., Co-Conspirator A texted Labeaud, "Can you do two tomorrow[?]" On or about May 16, 2017, at approximately 1:47 P.M., Labeaud texted Co-Conspirator A, "I need 25! It's my just me! N I'm kockin off 15[.]" On or about May 16, 2017, at approximately 1:51 P.M., Co-Conspirator A texted Labeaud, "Call me[.]"  On or about May 16, 2017, at approximately 1:52 P.M., Co-Conspirator A texted Labeaud, "Lawyer got u plus[.]"  On or about May 16, 2017, at approximately 1:53 P.M., Co-Conspirator A texted Labeaud, "I'm talking about two different."  On or about May 16, 2017, at approximately 9:41 P.M., Labeaud texted Solomon, "say bro call me asap!" and specifying that "it's very important."  At approximately 6:22 A.M., **KEATING** called Co-Conspirator A.

6



AUSA
Defendant
Defense Counsel

Co-Conspirator A and Givens traveled from the Houma, Louisiana area to meet with **KEATING** in New Orleans. At approximately 9:33 A.M., 10:07 A.M., and 10:48 A.M, **KEATING** called Co-Conspirator A to coordinate regarding the staged accidents that day. At approximately 11:39 A.M., Co-Conspirator A texted Labeaud, "Working on the roads we rolling now[.]" At approximately 1:52 P.M., Givens cashed a check from **KEATING**, dated May 17, 2017, referencing "client advance on settlement" in the amount of approximately $1,701.88 at a Whitney Bank in New Orleans. At approximately 2:03 P.M., Co-Conspirator A cashed a check from **KEATING**, dated May 17, 2017, referencing "client advance on settlement," in the amount of approximately $4,500.00 at a Whitney Bank in New Orleans. **KEATING** paid Co-Conspirator A this money for one of the staged accidents on May 17, 2017, and he paid Labeaud for the other.

After the staged accident on May 17, 2017, **KEATING** met with Francois, Gale, Smith, and Client E at a coffee shop on Canal Street to discuss **KEATING's** representation of Francois, Gale, Smith, and Client E. During the meeting, **KEATING** asked Francois, Gale, Smith, and Client E if they were injured in the accident. **KEATING** then explained that their recovery would depend on the amount and type of medical treatment they received.

Smith received "loans" or "client advances on settlement" from **KEATING**, including, but not limited to, checks in the approximate amounts of $750.00 on or about June 8, 2017; $750.00 on or about August 11, 2017; $1,200.00 on or about November 20, 2017; and $750.00 on or about December 22, 2017. Gale received "loans" or "client advances on settlement" from **KEATING**, including, but not limited to, checks in the approximate amounts of $500.00 on or about June 23, 2017, and $500.00 on or about November 30, 2017.

7

AUSA _____
Defendant _____
Defense Counsel _____

On or about March 1, 2018, **KEATING**, or an attorney at his direction, mailed an envelope via USPS to "Gallagher Basset [sic]," P.O. Box 2934, Clinton, Iowa 52733, containing a settlement demand on behalf of client Gale, demanding approximately $28,769.00 in settlement.

On or about May 17, 2018, **KEATING**, or an attorney at his direction, filed the Smith Lawsuit in CDC. On or about June 5, 2018, **KEATING**, or an attorney at his direction, mailed an envelope via USPS to Truck Driver C, *** Myer, Jackson, Mississippi 39209, containing a copy of the Smith Lawsuit. On or about July 12, 2018, an attorney at **KEATING's** direction, signed an affidavit of service, notarized by **KEATING**, and filed it in conjunction with the Smith Lawsuit.

In June 2019, Smith met with **KEATING**, at which time, **KEATING** instructed Smith to drop the Smith Lawsuit because insurance defense attorneys had learned of Smith's connection to Thomas, a client of **KEATING**, and a passenger in the June 6, 2017, staged accident. In or about June 2019, **KEATING** had Smith sign a Verification of Facts that Smith did not read.

### The June 6, 2017 Staged Accident (Chevrolet Avalanche)

On June 6, 2017, Thomas, Wade, Judy Williams, and Young were involved in a Labeaud/Solomon staged accident on Chef Menteur Highway near Downman Road involving a 2009 Chevrolet Avalanche ("Avalanche") with a 2017 Freightliner tractor-trailer owned by Southern Refrigerated Transport, Inc. ("SRT").

Labeaud called **KEATING** at approximately 10:58 A.M., shortly before the staged accident occurred at approximately 12:30 P.M. At approximately 12:44 P.M., **KEATING** sent a text message to Labeaud. At approximately 1:36 P.M. and 1:43 P.M., Labeaud called **KEATING**. At approximately 1:58 P.M., **KEATING** called Labeaud. At approximately 3:06 P.M., Labeaud called **KEATING**. Labeaud contacted **KEATING** and arranged a meeting with

8



AUSA
Defendant
Defense Counsel

him, Thomas, Wade, Judy Williams, and Young at the Cane's restaurant on Chef Menteur Highway. **KEATING** met with Labeaud, Thomas, Wade, Judy Williams, and Young after they finished with the NOPD at the scene of the staged accident in order to discuss **KEATING's** representation of Thomas, Wade, Judy Williams, and Young.

**KEATING** paid Labeaud with a $7,500.00 check from **KEATING's** Iberia account for the Thomas, Wade, Judy Williams, and Young staged accident as well as for another accident. On or about June 7, 2017, Labeaud cashed the $7,500.00 Iberia check that he received from **KEATING** on June 6, 2017.

After or about July 5, 2017, Thomas negotiated a $500.00 check that she received from Covenant Transportation Group ("Covenant"), the parent company that owned SRT. After or about November 27, 2017, **KEATING** deposited a $20,000.00 settlement check into his Iberia account for Young that **KEATING** received from Covenant.

On or about March 6, 2018, **KEATING** filed the Williams/Wade Lawsuit in CDC. On or about June 5, 2018, **KEATING** filed the Thomas Lawsuit in CDC. On or about September 13, 2018, Thomas, Wade, and Judy Williams each provided false testimony in depositions taken in conjunction with the lawsuits filed by **KEATING**.

During a subsequent meeting, **KEATING** gave Labeaud an envelope containing phone records, pleadings, and depositions establishing Thomas and Wade lied under oath in their September 13, 2018 depositions. Before on or about April 9, 2019, **KEATING** met with Thomas and Wade at a fast-food restaurant outside of New Orleans where **KEATING** told Thomas and Wade to get their stories straight.

On or about April 9, 2019, Thomas, Wade, and Judy Williams each provided false testimony in subsequent depositions taken in conjunction with the lawsuits filed by **KEATING**.



AUSA
Defendant
Defense Counsel

After or about June 7, 2019, Thomas, Wade, and Judy Williams each negotiated $7,500.00 settlement checks they received from Covenant.

### The June 12, 2017 Staged Accident (Chevrolet Trailblazer)

On June 12, 2017, Larry Williams, Client F, and Client G were involved in a Labeaud/Solomon staged accident on Chef Menteur Highway and the Danziger Bridge involving a 2005 Chevrolet Trailblazer ("Trailblazer") with a 2015 Peterbilt tractor-trailer operated by Southeastern Motor Freight, Inc. ("SMF").

Before on or about the June 12, 2017 staged accident, Labeaud told Larry Williams that he had an attorney, **KEATING**, who would handle everything. Labeaud called **KEATING** at approximately 11:21 A.M., shortly before the staged accident that occurred at 11:30 A.M. At approximately 1:00 P.M., Labeaud called **KEATING**, who was unavailable. At approximately 1:01 P.M., Labeaud called **KEATING's** law firm. After the staged accidents, Labeaud contacted **KEATING** and arranged a meeting with Labeaud, Larry Williams, Client F, and Client G at **KEATING's** office. On or about June 30, 2017, **KEATING** paid Labeaud with a $5,000.00 check from **KEATING's** Iberia account.

On or about June 12, 2018, **KEATING**, or an attorney at his direction, filed the Larry Williams Lawsuit in CDC. On or about September 14, 2018, **KEATING**, or an attorney at his direction, demanded approximately $60,000.00 in settlement for Client F and approximately $56,155.00 in settlement for Client G. On or about December 20, 2018, Larry Williams and Client G each provided false testimony in depositions taken in conjunction with the lawsuits filed by **KEATING** and an attorney acting at his direction. **KEATING** was present in a deposition when Client G testified under oath that Williams was driving the Trailblazer at the time of the collision, when in truth and fact Labeaud was driving. Client G lied when she/he testified the Trailblazer

10



AUSA _____
Defendant _____
Defense Counsel _____

was in the middle lane of traffic, when in truth and fact it was parked on the right shoulder.   Client

G lied when she/he testified the 18-wheeler came over and struck the Trailblazer.   Client G lied

when she/he testified the 18-wheeler changed lanes and came over into the Trailblazer's lane of

traffic.   Client G also lied in testifying that the pickup truck driven by Solomon was not parked

behind the Trailblazer moments before both vehicles pulled off the shoulder to intentionally crash

into the 18-wheeler.

### The Cover Up

In or about 2018, certain insurance defense attorneys began raising the defense of fraud in

connection with several suspicious 18-wheeler lawsuits pending in state and federal court.   As a

result, on or about January 2019, **KEATING** and Attorney B began sharing phone records in order

to identify clients whose phone numbers appeared on Labeaud's phone records.   **KEATING** and

Attorney B were concerned about any information that could connect them to Labeaud.

On or about February 13, 2019, Attorney B prepared a Verification of Facts and emailed

the template to **KEATING**. During an in-person meeting at a coffee shop around this same time,

Attorney B and **KEATING** discussed the FBI's investigation into staged accidents and Attorney

B suggested they could use the Verification of Facts as a cover to protect themselves from

prosecution. Attorney B also sent **KEATING** a pleading in a case where the defense was alleging

fraud for use as a sample response. During this meeting, Attorney B discussed having Labeaud

leaving town for a period of time while there was increased attention on the staged accidents.

Because of their mutual connection to Labeaud, Attorney B represented **KEATING** free of charge

in automobile accidents that he was involved in himself.

AUSA 
Defendant
Defense Counsel

## Conclusion

In total, the government would establish that **KEATING** and his clients received just under $1,500,000.00 in settlement resulting from his representation of his clients involved in the staged accidents and that **KEATING** kept approximately $358,000.00 in attorney's fees from the settled staged accidents orchestrated by Labeaud.

## Limited Nature of Factual Basis

This proffer of evidence is not intended to constitute a complete statement of all facts known by **KEATING**, and/or the government. Rather, it is a minimum statement of facts intended to prove the necessary factual predicate for his guilty plea. The limited purpose of this proffer is to demonstrate that there exists a sufficient legal basis for the plea of guilty to the charged offense by **KEATING**.

AUSA
Defendant
Defense Counsel



The above facts come from an investigation conducted by, and would be proven at trial by credible testimony from, *inter alia*, Special Agents and forensic examiners from the Federal Bureau of Investigation and admissible tangible exhibits in the custody of the FBI.

READ AND APPROVED:

DANNY PATRICK KEATING, JR.
Defendant

BRIAN CAPITELLI
Counsel for Defendant

BRIAN M. KLEBBA
Assistant United States Attorney

SHIRIN HAKIMZADEH
Assistant United States Attorney

MARIA M. CARBONI
Assistant United States Attorney

EDWARD J. RIVERA
Assistant United States Attorney